[Cite as *State v. Dasen*, 2017-Ohio-5556.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28172 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEVIN DASEN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2015-05-1621 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2017

SCHAFER, Presiding Judge.

**{¶1}** Defendant-Appellant, Kevin Dasen, appeals from his convictions and sentence entered in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

**{¶2}** E.D. is Dasen's biological daughter. E.D. was born in 1996 and has Asperger's Syndrome, developmental delays, and an IQ of 81. On May 18, 2015, E.D., age 19, informed her mother that Dasen had been sexually assaulting her for many years, with the most recent incident occurring just the day before on May 17, 2015. E.D.'s mother subsequently called the police and took E.D. to the rape crisis center at Akron City Hospital. According to the medical report from her examination, E.D. told her treating physician that Dasen had been sexually assaulting her for six years, since she was 13 years old. On May 20, 2015, Dasen surrendered himself to law enforcement.

{¶3}     On June 10, 2015, the Summit County Grand Jury returned a 21-count indictment charging Dasen with seven counts of rape in violation of R.C. 2907.02(A)(2) (Counts I-VII), all first-degree felonies, seven counts of rape in violation of R.C. 2907.02(A)(1)(c) (Counts VIII-XIV), all first-degree felonies, and seven counts of sexual battery in violation of R.C. 2907.03(A)(5) (Counts XV-XXI), all third-degree felonies.  Dasen pleaded not guilty to all of the charges contained in the indictment and the matter proceeded through the pretrial process.

{¶4}     On October 5, 2015, Dasen filed a motion to suppress, wherein he argued that the Akron Police Department's search of the contents of his cell phone constituted an unreasonable search.  The trial court ultimately denied Dasen's suppression motion following a hearing on the matter.  The State then filed a notice of intent to introduce Evid.R. 404(B) "other acts" evidence at trial, to which Dasen objected.  Following a hearing on the matter, the trial court determined that the evidence which the State sought to introduce at trial was not Evid.R. 404(B) "other acts" evidence, but permitted the State to introduce such evidence at trial since it was material and probative of one of the elements of rape.  Dasen subsequently notified the State and the trial court that he intended to introduce evidence of the victim's prior sexual history at trial.  The State thereafter filed a motion in limine seeking to exclude all evidence concerning the victim's prior sexual activity, arguing that such evidence would be in violation of R.C. 2907.02(D).  The trial court ultimately granted the State's motion in limine and prohibited Dasen from introducing such evidence at trial.  The matter then proceeded to a five-day jury trial.

{¶5}     At trial, the State presented seven witnesses who testified on its behalf.  At the close of the State's case-in-chief, Dasen made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied.  Dasen then testified on his own behalf before resting his case.  At the close of all evidence, the jury deliberated and ultimately found Dasen guilty of all seven

counts of rape in violation of R.C. 2907.02(A)(1)(c) (Counts I-VII) and guilty of all counts of sexual battery in violation of R.C. 2907.03(A)(5) (Counts XV-XXI). The jury, however, found Dasen not guilty of two counts of rape in violation of R.C. 2907.02(A)(2) (Counts XI and XIII), but guilty of the remaining five counts of rape in violation of R.C. 2907.02(A)(2) (Counts VIII, IX, X, XII, XIV, and XV).

{¶6} On March 2, 2016, the trial court conducted a sentencing hearing, at which time it determined that Counts I, II, and XXI, Counts III, IV, and XX, Counts V, VI, and IXX, Counts VII, VIII, and XVIII, Counts IX, X, and XVII, Counts XII and XVI, and Counts XIV and XV were allied offenses of similar import, respectively. The State elected to have Dasen sentenced on Counts II, IV, VI, VIII, X, XII, and XIV and the trial court determined that those counts were not allied offenses of similar import. The trial court sentenced Dasen to a definite 10-year prison term on each count and ordered those sentences be served consecutively for a total prison term of 70 years.

{¶7} Dasen filed this timely appeal and raises eight assignments of error for this Court's review. To facilitate our analysis, we elect to address Dasen's assignments out of order. Since assignments of error one and three implicate similar issues, we elect to address them together.

II.

**Assignment of Error III**

**The trial court erred as a matter of law because the State failed to establish on the record that there was sufficient evidence to support a conviction.**

**Assignment of Error I**

**Appellant's conviction was contrary to the manifest weight of the evidence and the jury lost its way when it found the Appellant guilty.**

{¶8} In his first and third assignments of error, Dasen argues that his convictions are both supported by insufficient evidence and against the manifest weight of the evidence. We disagree.

### A. Sufficiency of the Evidence

{¶9} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶10} This matter implicates Dasen's seven convictions for rape in violation of R.C. 2907.02(A)(1)(c), five convictions for rape in violation of R.C. 2907.02(A)(2), and seven convictions for sexual battery in violation of R.C. 2907.03(A)(5). Dasen argues on appeal that the State failed to present sufficient evidence at trial demonstrating that he engaged in sexual relations with E.D. during seven different time periods, that he raped E.D. by force over seven

different time periods, and that E.D. was unable to consent to sex during seven different time periods due to a disability. Dasen does not contest the sufficiency of the State's evidence with respect to the mens rea component of each respective statute and we constrain our analysis accordingly. We address each of Dasen's sufficiency arguments in turn.

### 1. Sexual Battery – R.C. 2907.03(A)(5)

{¶11} R.C. 2907.03(A)(5) states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶12} Here, Dasen does not dispute that E.D. is his biological daughter. Moreover, we note that Dasen's trial counsel conceded in his opening argument that "Mr. Dasen had sex with his daughter, not a secret." At trial, E.D. testified that Dasen is her father and identified him in court. E.D. testified that Dasen had sexually assaulted her continuously for years, beginning in 2009 when she was 13 years old. E.D. testified that although she could not remember each incident of sexual assault in great detail, she estimated that Dasen has sexually assaulted her 300 times between 2009 and 2015, with Dasen inserting his penis into her vagina in each instance.

{¶13} E.D. then recalled specific incidents of sexual assault in detail. Specifically, E.D. testified that the most recent incident of sexual assault occurred on May 17, 2015. E.D. testified that on that day, Dasen summoned her to his downstairs bedroom, but that she resisted because

she knew Dasen was going to assault her, as he has done several times prior. E.D. testified that she was "fighting a bit" with Dasen in an effort to stop Dasen, including hitting him and trying to push him down the stairs. E.D. testified that Dasen took her by the hand and ultimately got her into his bedroom. E.D. stated that once she was in Dasen's bedroom, Dasen "took my pants off, he rubbed my back, and then he inserted his penis into my vagina." E.D. recalled that Dasen undressed her while she was standing up and then picked her up and placed her onto his bed, where he proceeded to rub her back for a few minutes before inserting his penis into her vagina. E.D. testified that the assault on May 17, 2015, lasted for approximately a half hour and that Dasen did not use a condom. E.D. stated that because Dasen had been sexually assaulting her for several years, the assault on that particular day neither hurt nor felt good, but just felt awkward. E.D. testified that Dasen ultimately ejaculated inside of her.

{¶14} E.D. then proceeded to testify about the first time that Dasen ever sexually assaulted her. E.D. testified that Dasen first assaulted her in 2009. E.D. testified that she explicitly remembers that she was 13 years old when she was first sexually assaulted because the assault occurred approximately three years after her grandmother's death in November, 2006, and about "[a] month, to a month-and-a-half" after her cousin Heather moved from Ohio to Tennessee in 2009. E.D.'s cousin testified at trial that she did indeed move from Ohio to Tennessee in 2009. E.D. recalled that Dasen gave her bourbon to drink. E.D. testified that she drank one or two shots of bourbon, which was her first time ever drinking alcohol. E.D. testified that she "felt awful funny" and went to sleep in her bedroom. E.D. testified that she awoke with Dasen on top of her with his penis inside of her vagina. E.D. testified that her nightgown was "[h]iked up abover [her] waist" and that Dasen's hands were covering her mouth, which prevented her from speaking. E.D. also testified that she did not resist because she was scared

that Dasen would hurt her, as she once "got thrown into a wall" by Dasen when she resisted a spanking. E.D. noted that Dasen had anger problems and that he would often become violent. E.D. further testified that she could not remember how long that first assault lasted since her "mind was pretty fogged from the alcohol." E.D. testified that a few days after the first assault occurred, Dasen told her that nobody would believe her if she ever reported the incident and even threatened to kill her if she told anybody about it.

{¶15} E.D. subsequently testified that in the springtime of 2010, while she was still attending school, Dasen took her upstairs to his bedroom where he gave her alcohol. E.D. testified that Dasen proceeded to remove her clothes and rubbed his hands up and down her body for a minute before inserting his penis into her vagina. E.D. testified that Dasen assaulted her on his bed during this encounter.

{¶16} E.D. further testified about similar encounters that occurred in 2011, 2012, 2013, and 2014. E.D. testified that in 2011, Dasen took her upstairs to his bedroom where they both smoked a blunt. E.D. testified that Dasen then had her lay down on his bed, where he proceeded to pull up her dress and insert his penis into her vagina. E.D. then testified that in 2012, prior to spring break at school, Dasen took her upstairs to her own bedroom. E.D. testified that once inside her bedroom, Dasen removed her clothes and proceeded to have vaginal intercourse with her on a futon. E.D. recalled that in early 2013, before her birthday in February, Dasen entered her bedroom and "kept insisting" to see her breasts or vagina. E.D. testified that Dasen then asked if he could insert his penis into her vagina, which he did upon her acquiescence. E.D. testified that she allowed Dasen to have vaginal intercourse with her on that occasion in early 2013 because she was scared of him becoming violent. E.D. testified that at some point she stopped resisting Dasen's sexual advances because he would yell at her or would tie her wrists if

she did not acquiesce. Lastly, E.D. testified about an encounter in 2014 where after eight or ten hours of Dasen begging to have sex with her, she relented and had vaginal intercourse with Dasen in his downstairs bedroom.

{¶17} E.D. also testified that when she was 13 years old, Dasen would sexually assault her "maybe once or twice a month," but that the incidents became more frequent as she got older. E.D. testified that Dasen would sexually assault her maybe once a week when she was 14 years old, approximately twice a week when she was 15 years old, and three or four times a week when she was 16 years old. E.D. testified that each incident involved vaginal intercourse, though occasionally Dasen would have her perform oral sex. E.D. testified that she felt confused whenever Dasen would assault her because she "didn't know if it was right or wrong." E.D. also testified that Dasen would become violent if she ever refused to have sex with him.

{¶18} Based upon E.D.'s aforementioned testimony, we determine that the State presented sufficient evidence that Dasen engaged in sexual conduct with E.D., his biological daughter, on seven separate occasions. Specifically, the State put forth evidence which, if believed, demonstrated that Dasen had vaginal intercourse with E.D. approximately 300 times between 2009 and 2015, while occasionally having E.D. perform oral sex on him during this same time period. The evidence adduced at trial further reveals that Dasen had vaginal intercourse with E.D. in 2009, 2010, 2011, 2012, 2013, 2014, and 2015, and that E.D. explicitly recounted seven separate incidents of sexual assault at trial. Thus, based on the foregoing evidence, we conclude that the State met its burden of production with respect to all seven counts of sexual battery.

**2. Rape – R.C. 2907.02(A)(1)(c)**

{¶19} R.C. 2907.02(A)(1)(c) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."

> Substantial impairment is not defined for purposes of this statute, nor has the Ohio Supreme Court ever defined the term for purposes of addressing the sufficiency of evidence. In a case that raised a different question, however, the Court noted that: "The phrase 'substantially impaired' * * * must be given the meaning generally understood in common usage. * * * [It] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope[.]"

*State v. Daniels*, 9th Dist. Summit No. 25808, 2011–Ohio–6414, ¶ 6, quoting *State v. Zeh*, 31 Ohio St.3d 99, 103–104 (1987). Expert testimony is not required to establish substantial impairment, and the existence of a substantial impairment may be proven by the victim's testimony. *Daniels* at ¶ 6.

{¶20} As we previously concluded, the State presented sufficient evidence demonstrating that Dasen engaged in sexual conduct with E.D., his biological daughter, on seven different occasions. With respect to whether E.D. had a mental or physical condition that substantially impaired her ability to resist or consent to Dasen's sexual conduct, E.D. testified that she drank bourbon the first time her father ever assaulted her in 2009. E.D. stated that after taking one or two shots of the bourbon, she felt "awful funny" and went to her bedroom to sleep. E.D. testified that she later awoke to Dasen on top of her, penetrating her vagina with his penis. Lastly, E.D. testified that she does not recall many details of that first assault in 2009 because her "mind was pretty fogged from the alcohol."

{¶21} E.D.'s cousin, Heather B., also testified at trial. Heather testified that she was an active participant in E.D.'s life when she was younger. Heather testified that when E.D. was in second or third grade, she had "learning deficits" and had a hard time socializing with peers. Heather stated that Dasen and E.D.'s mother had E.D. tested when she was a child, whereupon they learned that E.D. had autism. Heather testified that E.D. was placed in special education programs that catered to her special needs and that E.D. attended 16 different schools since she was in kindergarten, including a stint of homeschooling. Lastly, Heather testified that E.D. had trouble taking care of her own hygiene as a teenager.

{¶22} Moreover, E.D.'s mother testified at trial. E.D.'s mother testified that E.D. was born premature at 26-weeks' gestation. She testified that E.D. had many developmental delays as a child and did not start talking or using full sentences until she was four years old. She further testified that E.D. was diagnosed at a young age with Asperger's Syndrome, which she noted is a form of autism. E.D.'s mother testified that E.D. often retreats when she is in large crowds. She also testified that she had to keep E.D. on a harness until the age of 13 whenever they were in public because E.D. would often wander. E.D.'s mother also testified that E.D. has an IQ of 81 and that even though E.D. was almost 20 years old at the time of trial, she was still "a 13-year-old mentally." Lastly, E.D.'s mother testified that Dasen was aware that E.D. is autistic.

{¶23} Additionally, the State presented the expert testimony of Dr. Susan LeSure, a psychologist who reviewed E.D.'s medical and educational records. Dr. LeSure testified that E.D. has been diagnosed with autism spectrum disorder, attention deficit hyperactivity disorder, and expressive and receptive language disorder. Dr. LeSure testified that individuals with these disabilities are "more vulnerable" because they are often enrolled in special classes at school

where they are "not exposed to the same kind of prevention activities or training around sexuality." She further testified that individuals with these disabilities often have less understanding of what is going on around them, are less able to communicate or express themselves, may be more isolated due to lack of good social skills, have trouble understanding relationships, and are less likely to be believed because they have trouble expressing themselves.

{¶24} Dr. LeSure further testified that E.D.'s school records reveal that she started receiving special services as early as preschool due to a speech and language disability. Moreover, she testified that E.D.'s school testing shows that E.D. "is at the tenth percentile relative to other children her age cognitively and subsequent testing has documented the same cognitive vulnerability." According to Dr. LeSure, E.D.'s school testing shows that E.D.'s ability to sustain attention, concentrate, and exert mental control "was in a borderline delayed range" and that E.D.'s academic skills "were at three percent relative to her peers" as of 2008. Based upon all of this information, Dr. LeSure testified that she believes that E.D. "would be more vulnerable [to sexual assault] than a child who was developing typically."

{¶25} Based on the foregoing evidence, we determine that the State presented sufficient evidence showing that Dasen engaged in sexual conduct with E.D. when E.D.'s ability to resist was substantially impaired because of a mental condition and Dasen knew that E.D.'s ability to resist was substantially impaired because of a mental condition. The evidence presented at trial, if believed, demonstrated that Dasen had vaginal intercourse with his daughter approximately 300 times between 2009 and 2015, including the seven specific times described by E.D. during her trial testimony. Moreover, the evidence, if believed, shows that Dasen knew that his daughter was autistic, had cognitive disabilities, and had developmental delays at the time that he engaged in sexual conduct with E.D. Lastly, with respect to the first time that Dasen sexually

assaulted E.D. in 2009, the evidence demonstrates that E.D.'s mind was "foggy" during the encounter due to drinking bourbon supplied by Dasen. Thus, based on the foregoing evidence, we conclude that the State met its burden of production with respect to all seven counts of rape in violation of R.C. 2709.02(A)(1)(c).

### 3. Rape – R.C. 2907.02(A)(2)

{¶26} R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (internal citation omitted.) *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). Moreover, the Supreme Court of Ohio has recognized "the coercion inherent in parental authority when a father sexually abuses his child." *Id*. at 58. "Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *Id*. at 59.

{¶27} In the present matter, we again note that the State presented sufficient evidence to sustain Dasen's seven sexual battery convictions. E.D. testified that Dasen, her biological father, sexually abused her approximately 300 times between 2009 and 2015. When testifying about the first time that Dasen ever assaulted her in 2009, E.D. recalled that she awoke to Dasen penetrating her vagina with his penis and covering her mouth with his hands, which prevented her from speaking. E.D. testified that she did not resist this assault because she was scared that

Dasen would hurt her, as she once "got thrown into a wall" by Dasen when she resisted a spanking. E.D. testified that days after the first assault occurred, Dasen threatened to kill her if she ever told anybody about what he had done. Dasen also told E.D. that nobody would ever believe her if she reported him.

{¶28} E.D. also testified that Dasen had an anger problem. E.D.'s mother buttressed E.D.'s testimony on this point. E.D. testified that Dasen attended anger management classes around 2012, which proved to be unsuccessful. E.D. testified that Dasen would often yell and become violent when he was angry. Regarding the early 2013 assault that E.D. recalled in her trial testimony, E.D. stated that she allowed Dasen to have vaginal intercourse with her because she was scared of him becoming violent. E.D. testified that at some point she stopped resisting Dasen's sexual advances because he would always yell at her or would often tie her wrists together if she did not acquiesce. Moreover, with respect to the last incident of sexual abuse that occurred on May 17, 2015, E.D. testified that Dasen led her by her hand into his bedroom against her will. E.D. testified that she tried hitting Dasen and pushing him down the stairs to prevent him from sexually abusing her, but to no avail. E.D. testified that Dasen removed her clothing, laid her on his bed, and had vaginal intercourse with her for nearly half an hour. Lastly, the State presented evidence during its case-in-chief that Dasen weighs roughly 280 pounds, whereas E.D. weighs between 90 and 100 pounds.

{¶29} Based on the foregoing evidence, we determine that the State presented sufficient evidence demonstrating that Dasen engaged in sexual conduct with E.D. when he purposely compelled E.D. to submit by force or threat of force. The evidence at trial demonstrates that Dasen compelled E.D. to submit to vaginal intercourse by force or threat of force by means of removing her clothing, covering her mouth, tying her wrists, yelling at her, becoming violent

towards her, and/or threatening to kill her if she ever tells anybody. *See Eskridge*, 88 Ohio St.3d at 58-59 (noting the forcible element of rape is properly established when "a child is told to do something by an important figure of authority, and commanded not to tell anyone about it"). Additionally, E.D. stated that she ultimately stopped rejecting Dasen's sexual advances out of fear of Dasen yelling or becoming violent. Lastly, the State presented evidence of the age difference and disparity in size between Dasen and E.D., as well as E.D.'s confused feelings while enduring sexual abuse at the hands of her father. *See id.* at 58, citing *State v. Labus*, 102 Ohio St. 26, 38-39 (1921) (noting that "[t]he force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other" and also that a child's "filial obligation of obedience" to a parent can be sufficient to establish force "upon a person of such tender years"). Thus, based on the foregoing evidence, we conclude that the State met its burden of production with respect to all five counts of rape in violation of R.C. 2709.02(A)(2) with which Dasen was convicted.

{¶30} Accordingly, we conclude that Dasen's 19 convictions were supported by sufficient evidence at trial.

## B. Manifest Weight of the Evidence

{¶31} Turning to his manifest weight argument, Dasen contends that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted him of 12 counts of rape and seven counts of sexual battery. We disagree.

{¶32} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. When applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶33} Having reviewed the record, we cannot conclude that the jury lost its way when it determined that Dasen was guilty of rape and sexual battery. The jury heard testimony from E.D. that Dasen, her biological father, engaged in sexual conduct with her nearly 300 times between 2009 and 2015, including the seven separate timeframes outlined in the indictment. E.D. further testified that she submitted to Dasen's sexual advances out of fear of being at the receiving end of Dasen's angry outbursts. E.D. testified that if she ever refused to have sex with Dasen that he would yell at her or tie her wrists together and have sex with her anyway. Moreover, several of the State's witnesses testified concerning E.D.'s autism diagnosis and developmental delays, from which the jury could have concluded that E.D.'s ability to resist or consent to sexual conduct was substantially impaired.

{¶34} Although Dasen attempted to show through his own testimony and through cross-examination that E.D. instigated all sexual encounters with him and that she blackmailed him to continue having sex with her, the jury was free to disregard that theory. This is also true of Dasen's attempt at trial to downplay the significance of E.D.'s autism and other disabilities. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010–Ohio–3296, ¶ 15. We "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's

version of events over another version." *State v. Barger*, 9th Dist. Medina No. 14CA0074–M, 2016–Ohio–443, ¶ 29. Thus, because Dasen has failed to demonstrate that this is the exceptional case where the jury lost its way by convicting him, we reject his argument that his convictions are against the manifest weight of the evidence. *See Otten* at 340.

**{¶35}** Dasen's first and third assignments of error are overruled.

**Assignment of Error II**

**The trial court erred by denying Defendant's motion to suppress evidence obtained through a warrantless search of his cell phone in violation of Article I Section 14 of the Ohio Constitution and the Fourth Amendment of the United States Constitution.**

**{¶36}** In his second assignment of error, Dasen contends that the trial court erred by denying his suppression motion. Specifically, Dasen contends that he did not knowingly and voluntarily consent to have law enforcement search his cell phone. Dasen also argues that law enforcement's search of his cell phone exceeded the scope of his consent where the Akron Police Department outsourced the search of his cell phone to the Internet Crimes Against Children (ICAC) Task Force in Cleveland, Ohio. We disagree with both arguments.

**{¶37}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).

**{¶38}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution, guarantee the right of the people to be free from unreasonable searches and seizures by the government. *State v. Orr*, 91 Ohio St.3d 389, 391 (2001). These two provisions contain nearly identical language and the Supreme Court of Ohio has interpreted them as affording the same level of protection. *Id*. The touchstone of the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions." *State v. Robinson*, 9th Dist. Summit No. 26741, 2014-Ohio-579, ¶ 13, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception to the warrant requirement for a reasonable search is consent signifying waiver of constitutional rights. *State v. Price*, 134 Ohio App.3d 464, 467 (9th Dist.1999), citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), citing *Davis v. United States*, 328 U.S. 582, 593-594 (1946). Once a defendant demonstrates that he was subjected to a warrantless search or seizure, the burden then shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. *Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999); *Xenia v. Wallace,* 37 Ohio St.3d 216 (1988), paragraph two of the syllabus.

**{¶39}** In order to rely on the consent exception to the Fourth Amendment's warrant requirement, the State must demonstrate that the consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *State v. Posey*, 40 Ohio St.3d 420, 427 (1988); *State v. Beougher*, 9th Dist. Summit No. 21378, 2003-Ohio-3591, ¶ 10. "[T]he government bears the burden of showing that consent was 'freely and voluntarily' given by 'clear and positive' evidence." *State v. Feeney*, 9th Dist. Summit No. 25727, 2011-Ohio-5474, ¶

12, quoting *State v. Cummings*, 9th Dist. Summit No. 20609, 2002 WL 57979, *3 (Jan. 16, 2002), citing *State v. Robinette*, 80 Ohio St.3d 234, 243 (1997). "Whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of the circumstances." *Beougher* at ¶ 10, quoting *Schneckloth*, 412 U.S. at 227. "Voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *Robinette* at 241, citing *Davis* at 593-594.

**{¶40}** Detective Clayton Cozart of the Akron Police Department testified at the suppression hearing that he had an opportunity to interview Dasen on May 20, 2015. Detective Cozart testified that Dasen voluntarily turned himself in at the police station before an arrest warrant had been signed. Detective Cozart testified that he subsequently gave *Miranda* warnings to Dasen and interviewed him in a room located within the police department.

**{¶41}** Detective Cozart testified that during the course of the interview, Dasen admitted to possessing sexually explicit photographs of E.D. on his cell phone. Detective Cozart testified that Dasen then voluntarily produced his cell phone and permitted him to search it and use its contents as evidence. Detective Cozart testified that he never asked Dasen about his cell phone or asked to look at his cell phone's contents prior to this point in the interview. Detective Cozart testified that he then retrieved a "consent to search" form for the cell phone, read the form aloud to Dasen, and had Dasen sign the form. The form authorized law enforcement to conduct a complete search of the cell phone's contents. Detective Cozart testified that he subsequently gave the cell phone to a police officer who works with ICAC. Detective Cozart testified that ICAC was the organization that actually searched the contents of Dasen's cell phone.

{¶42} Given the evidence presented at the suppression hearing, Dasen cannot prevail on his argument that he did not knowingly or voluntarily consent to have his cell phone searched. The evidence clearly demonstrates that prior to signing the "consent to search" form, Dasen orally authorized Detective Cozart to search his cell phone and use its contents as evidence. Indeed, the evidence shows that Dasen was the individual who first discussed the contents of his cell phone and permitted law enforcement to search his cell phone, even before Detective Cozart ever broached the subject during the interview. Moreover, the fact that Dasen signed a written waiver is strong proof that the waiver was valid. *See State v. Jackson*, 5th Dist. Richland No. 2012-CA-20, 2012-Ohio-5548, ¶ 35 (determining that appellant's signing of a written consent form was "strong proof" that she voluntarily gave police officers consent to search a house), citing *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). Thus, under the totality of these circumstances, we cannot conclude that Dasen did not knowingly or voluntarily consent to have law enforcement search his cell phone.

{¶43} With respect to Dasen's argument that the search of his cell phone exceeded the scope of his consent, we likewise conclude that Dasen's argument is without merit. The Supreme Court of Ohio has held that "[t]he standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 99, citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). A review of the evidence adduced at the suppression hearing shows that during his interview with Detective Cozart, Dasen authorized law enforcement to search his cell phone, both orally and in writing. Dasen explicitly told Detective Cozart that he could search the cell phone and use it as evidence. There is nothing indicating that Dasen sought to limit which law enforcement officer

or agency searched his cell phone. Accordingly, absent any indication to the contrary, we conclude that a reasonable person in Detective Cozart's position would have understood Dasen's spoken and written consent as permission for any law enforcement officer or agency to search the contents of his cell phone during the course of the investigation in this matter.

{¶44} Having determined that Dasen knowingly and voluntarily consented to the search his cell phone and that the search did not exceed the scope of his consent, Dasen's second assignment of error is overruled.

### Assignment of Error V

**The trial court erred and abused its discretion when it granted the State's 404(B) motion over Mr. Dasen's objection.**

{¶45} In his fifth assignment of error, Dasen argues that the trial court erred by granting the State's "404(B) other acts motion." Specifically, Dasen challenges the trial court's decision permitting the State to introduce certain evidence at trial, including testimony concerning: (1) prior incidents of domestic violence; (2) his behavior when intoxicated and angry; (3) how he disciplined his children; and (4) his installation of a GPS tracking system on his family members' cell phones. We disagree with Dasen's argument.

{¶46} We note that Dasen's fifth assignment of error strictly argues that the trial court erred by granting the State's Evid.R. 404(B) motion. The record indicates that the State filed a "notice of intent to use [Evid.R.] 404(B) evidence." Following a hearing on the matter, the trial court explicitly determined that it did not consider the proffered testimony to be Evid.R. 404(B) "other acts" evidence. The trial court, however, still permitted the State to introduce the proffered evidence at trial since it considered it to be material and probative of one of the elements of rape. Thus, we disagree with Dasen's argument to the extent that he claims that the trial court erred by permitting the State to introduce "other acts" evidence. To the extent that

Dasen attempts to challenge the trial court's decision permitting the State to introduce its proffered testimony on some other basis, such a challenge is beyond the scope of his stated assignment of error. Accordingly, this Court will not address such an argument. *See, e.g., State v. Bennett*, 9th Dist. Lorain No. 14CA010579, 2015-Ohio-2887, 13 (noting that an appellant's assignment of error provides a roadmap for an appellate court's review).

{¶47} Dasen's fifth assignment of error is overruled.

**Assignment of Error VI**

**The trial court erred when it granted the State's motion in limine to exclude any evidence that allegedly violated the Rape Shield Law.**

{¶48} In his sixth assignment of error, Dasen contends that the trial court erred by granting the State's motion in limine to exclude evidence of E.D.'s past sexual conduct on the basis of the rape shield law. We disagree.

{¶49} "A motion in limine 'is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury.'" *State v. Echard*, 9th Dist. Summit No. 24643, 2009–Ohio–6616, ¶ 3, quoting *State v. Grubb*, 28 Ohio St.3d 199, 201 (1986). This Court is not required to decide whether a trial court's order granting or denying a motion in limine is proper if the claimed error is not preserved by objection, proffer, or ruling on the record at the pertinent part during the trial. *State v. Bobo*, 9th Dist. Summit No. 21581, 2004–Ohio–195, ¶ 5. In order to properly preserve any objection for appellate review, "[a]t trial, it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility * * *." *Grubb* at paragraph two of the syllabus.

{¶50} In the instant case, the trial court granted the State's motion in limine to exclude evidence regarding E.D.'s past sexual conduct. As such, Dasen was required at trial to seek the introduction of this evidence by proffer or otherwise to properly preserve this issue for appeal. A thorough review of the record reveals that Dasen failed to do so. Therefore, Dasen has not properly preserved this issue for appeal and we decline to address it. *See Bobo* at ¶ 6 ("[Appellant] has not properly preserved this error for appeal, and this Court has nothing to review.").

{¶51} Dasen's sixth assignment of error is overruled.

### Assignment of Error VII

**The trial court erred when it permitted [the victim's] medical records over Mr. Dasen's objections.**

{¶52} In his seventh assignment of error, Dasen argues that the trial court erred by admitting E.D.'s medical records to the extent that they contained hearsay statements. We disagree.

{¶53} A trial court's decision regarding the admissibility of evidence will not be overturned absent a clear abuse of discretion and material prejudice to the defendant. *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 22. An abuse of discretion denotes that the trial court's determination was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶54} Under Evid.R. 803(6), business records are excepted from the hearsay rule. Dasen does not dispute that the medical records at issue were adequately authenticated or that they are business records, but he asserts that the Court erred nonetheless in admitting the records

without the accompanying testimony of the medical professionals responsible for the diagnoses contained therein. Dasen has not cited to any legal authority within his brief for the proposition that a hospital's properly authenticated business records must be accompanied by expert testimony. To the contrary, this Court has concluded that properly authenticated medical records are admissible as business records under Evid.R. 803(6) without offending a defendant's right to confront witnesses because those records are not testimonial in nature. *State v. Tolbert*, 9th Dist. Summit No. 24958, 2010-Ohio-2864, ¶ 12.

**{¶55}** Dasen also argues that statements made by E.D. to her medical providers identifying him as her sexual abuser over the course of the past six years should not have been admitted. Evid.R. 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are exceptions to the hearsay rule. While this exception does not permit the admission of any and all statements made during a medical examination, "this Court has consistently held that a description of the encounter and even identification of the perpetrator are within the [Evid.R. 803(4)] exception, as statements made for purposes of diagnosis or treatment." *State v. Stahl*, 9th Dist. Summit No. 22261, 2005–Ohio–1137, ¶ 15, citing *State v. Eagle*, 9th Dist. Wayne No. 04CA0003, 2004–Ohio–3255, ¶ 16; *State v. Wade*, 9th Dist. Medina No. 02CA0076–M, 2003–Ohio–2351, ¶ 6. Accordingly, we determine that the trial court did not err by admitting E.D.'s statements identifying Dasen as her abuser since the age of 13.

**{¶56}** Lastly, Dasen contends that the trial court erred by not redacting the portion of E.D.'s medical report wherein E.D.'s mother, Jillian, informed medical personnel that she and

E.D. would both be living with another family member for the time being to ensure their physical safety. However, we conclude that this statement, which concerns where and with whom E.D. would reside in the immediate wake of her reporting her sexual abuse, would assist medical professionals in treating E.D. Specifically, such information would aid in E.D.'s treatment by preventing future sexual abuse and by removing E.D. from an emotionally and psychologically unhealthy living environment. Thus, we determine that the trial court did not abuse its discretion in admitting E.D.'s medical report in full since the statements contained therein were made for the purposes of treatment pursuant to Evid.R. 803(4).

{¶57} Dasen's seventh assignment of error is overruled.

**Assignment of Error VIII**

**The cumulative effect of all the errors enumerated in assignments of error 2, 5, 6, and 7 denied the Appellant the right to a fair trial and due process under the Sixth and Fourteenth Amendments to the United States Constitution, R.C. 2901.04, and Article I Section 10 of the Ohio Constitution.**

{¶58} In his eighth assignment of error, Dasen contends that cumulative impact of the errors articulated in his second, fifth, sixth, and seventh assignments of error deprived him of a fair trial and due process of law. We disagree.

{¶59} Under the cumulative error doctrine, a judgment may be reversed if the cumulative effect of multiple errors deprives a party of his constitutional rights even though, individually, the errors may not rise to the level of prejudicial error or cause for reversal. *See State v. Garner,* 74 Ohio St.3d 49, 64 (1995). However, as indicated by our resolution of the previous assignments of error, Dasen has not identified a single instance of error. As such, Dasen's argument regarding cumulative error is not well-taken. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132 ("[T]he doctrine of cumulative error is not applicable to the present case, because there were no multiple errors.")

**{¶60}** Dasen's eighth assignment of error is overruled.

## Assignment of Error IV

**The trial court erred and abused its discretion in imposing Appellant's sentence.**

**{¶61}** In his fourth assignment of error, Dasen argues that the trial court erred by failing to adequately make the requisite findings pursuant to R.C. 2929.11 and R.C. 2929.12 prior to imposing its sentence. Additionally, Dasen argues that the trial court erred by determining that Counts II, IV, VI, VIII, X, XII, and XIV were not allied offenses of similar import. We disagree with both arguments.

### A. Requisite Statutory Findings

**{¶62}** In reviewing a felony sentence, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes," or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶63}** The Supreme Court of Ohio has held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range[.]" *State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, paragraph seven of the syllabus. "[W]here the trial court does not put on the record its consideration of [Sections] 2929.11 and 2929.12 [of the Ohio Revised Code], it is presumed that the trial court gave proper consideration to those statutes." (Alterations sic.) *State v. Steidl*, 9th Dist. Medina No. 10CA0025–M, 2011–Ohio–2320, ¶ 13, quoting *State v. Kalish*, 120 Ohio

St.3d 23, 2008-Ohio-4912, ¶ 18 fn. 4. "Unless the record shows that the court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054–M, 2014–Ohio–3651, ¶ 8, quoting *State v. Boysel*, 2d Dist. Clark No. 2013–CA–78, 2014–Ohio–1272, ¶ 13.

{¶64} In support of his argument that the trial court's sentence is erroneous, Dasen raises multiple issues. He states that there is no evidence that he committed the offenses, that the trial court did not address the likelihood of recidivism, that the likelihood of recidivism is minimal, and that the trial court did not properly consider mitigating circumstances. We reject each of these contentions.

{¶65} At the sentencing hearing, the trial court recounted how Dasen "took full advantage" of his daughter's "developmental delays." The trial court stated that Dasen is "the worst type of offender" and that his conduct of blaming his autistic daughter for his own actions was "the worst of the worst." The trial court then explicitly addressed R.C. 2929.11, the principles and purposes of sentencing, and R.C. 2929.12, the seriousness and recidivism factors at the sentencing hearing. Specifically, the trial court found that the mental injury suffered by the victim in this case was exacerbated because of her young age at the time the offenses occurred. The trial court found that the victim "suffered serious psychological harm because of the offenses." The trial court further noted that by continuously blaming his daughter and not taking responsibility for his actions, Dasen exhibited no genuine remorse and was thus "not a candidate for rehabilitation."

{¶66} Dasen does not dispute that his respective sentences fall within the applicable statutory range. Moreover, the trial court's March 3, 2016, sentencing entry states that it

considered the principles and purposes of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. The record, therefore, does not show that the trial court failed to consider those factors, including the purportedly mitigating factors that Dasen lists in his appellate brief. Furthermore, the record does not show that Dasen's sentence is strikingly inconsistent with the factors. Accordingly, upon review of the record, we cannot find by clear and convincing evidence that it does not support the 70-year prison sentence imposed by the trial court. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, at ¶ 23.

## B. Merger

{¶67} Dasen also argues that the offenses upon which he was sentenced should merge as they are allied offenses of similar import. We apply de novo review when considering a trial court's decision regarding merger of convictions for the purposes of sentencing. *State v. Williams*, 134 Ohio St.3d 482, 2012–Ohio–5699, ¶ 1. "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, ¶ 23. The statute provides as follows:

> (A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Two or more offenses may result in multiple convictions if any of the following is true: "(1) the offenses are dissimilar in import or significance—in other words, each offense

caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, ¶ 25. This inquiry "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26.

**{¶68}** We determine that Dasen's merger argument is without merit. Dasen was sentenced on seven counts of rape, to wit: Counts II, IV, VI, VIII, X, XII, and XIV. A review of the indictment, as well as the State's evidence presented at trial, demonstrates that the seven counts upon which Dasen was sentenced involved seven completely separate incidents that occurred during different date ranges. Specifically, Count II occurred between February 11, 2009 and February 10, 2010, Count IV occurred between February 11, 2010 and February 10, 2011, Count VI occurred between February 11, 2011 and February 10, 2012, Count VIII occurred between February 11, 2012 and February 10, 2013, Count X occurred between February 11, 2013 and February 10, 2014, Count XII occurred between February 11, 2014 and February 10, 2015, and Count XIV occurred between February 11, 2015 and May 17, 2015. Accordingly, we conclude that the trial court did not err by failing to merge Counts II, IV, VI, VIII, X, XII, and XIV for purposes of sentencing. *See State v. Lett*, 7th Dist. Mahoning No. 15 MA 0128, 2016-Ohio-4811, ¶ 47 (noting that no offenses merge where they involve different dates, victims, and/or separate conduct).

**{¶69}** Dasen's fourth assignment of error is overruled.

III.

**{¶70}** With all eight of Dasen's assignments of error having been overruled, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.