[Cite as *State v. Rivera*, 2019-Ohio-62.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 18CA011263 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWIN RIVERA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 13CR087882 |

DECISION AND JOURNAL ENTRY

Dated: January 14, 2019

---

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Edwin Rivera, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} In April 2013, Mr. Rivera was living with his long-time girlfriend and her daughter, G.O. Although G.O. was nineteen-years-old at the time, she had not yet graduated from high school, attended special education classes, and was subject to a guardianship. One morning before she left for school, she and Mr. Rivera had an argument that resulted in him breaking the cell phone that she had been using to exchange messages with her boyfriend. After that argument, G.O. went to school and informed school officials that Mr. Rivera had been sexually assaulting her. A detective then interviewed G.O., as well as Mr. Rivera, and G.O. was examined by a sexual assault nurse examiner. As a result of the investigation, the police arrested Mr. Rivera.

{¶3}   A grand jury indicted Mr. Rivera on two counts of sexual battery, charged under alternative statutory provisions, and one count of gross sexual imposition. The matter proceeded to a jury trial and, at its conclusion, the jury found Mr. Rivera not guilty of one count of sexual battery and guilty of his remaining counts. The court sentenced him to three years of community control and classified him as a tier III sexual offender.

{¶4}   Mr. Rivera now appeals from his convictions and raises five assignments of error for this Court's review. For ease of analysis, this Court rearranges and consolidates several of the assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 5**

WHEN CONSIDERED IN THE LIGHT MOST FAVORABLE TO THE STATE, THE EVIDENCE PRESENTED AT TRIAL WAS NOT LEGALLY SUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT.

{¶5}   In his fifth assignment of error, Mr. Rivera argues that his convictions are based on insufficient evidence. Specifically, he argues that the State failed to prove, beyond a reasonable doubt, that G.O. suffered from a substantial impairment. We disagree.

{¶6}   Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law that this Court reviews de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶7} A person commits sexual battery if he engages in sexual conduct with another, who is not his spouse, when he "knows that the other person's ability to appraise the nature of or control [her] own conduct is substantially impaired." R.C. 2907.03(A)(2). Meanwhile, a person commits gross sexual imposition if he has sexual contact with another, who is not his spouse, when (1) that person's ability "to resist or consent * * * is substantially impaired because of a mental or physical condition," and (2) "the offender knows or has reasonable cause to believe that the [person's] ability to resist or consent * * * is substantially impaired because of a mental or physical condition * * *." R.C. 2907.05(A)(5). The phrase "substantially impaired" is not statutorily defined, so it

> "must be given the meaning generally understood in common usage. * * * [It] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct. This is distinguishable from a general deficit in ability to cope * * *."

(First alteration sic.) *State v. Daniels*, 9th Dist. Summit No. 25808, 2011-Ohio-6414, ¶ 6, quoting *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987). "Expert testimony is not required to establish substantial impairment, and the existence of a substantial impairment may be proven by the victim's testimony." *State v. Dasen*, 9th Dist. Summit No. 28172, 2017-Ohio-5556, ¶ 19, citing *Daniels* at ¶ 6. The question of whether an individual suffers from a substantial impairment "requires a case-by-case determination." *Daniels* at ¶ 6.

{¶8}	G.O. was twenty-three years old at the time of Mr. Rivera's trial.  She testified that she graduated from high school at the age of twenty and "was in an ed class" for people who did not "know how to spell and * * * how to write."  She testified that she did not have a driver's license, but wanted to drive because her boyfriend could do so.  Though she had some experience working at a restaurant, G.O. indicated that her employment there had ended because it arose through a community service/life skills class facilitated by her school.  She stated that she was unemployed and received supplemental security income ("SSI"), which her mother managed on her behalf.

{¶9}	G.O. testified that, when she was nineteen years old and still pursuing her high school degree, she lived with her mother and Mr. Rivera, who she referred to as her step-dad.  One morning, G.O. went to school and informed a school official that Mr. Rivera had touched her.  G.O. testified that Mr. Rivera would follow her into her bedroom when she showered and would touch her when she was getting dressed.  She also testified that he would touch her in his bedroom at night.  G.O. became confused when asked for specific details regarding when Mr. Rivera had last touched her or how often the incidents had occurred.  Nevertheless, she testified that he had touched her breasts with his hands, had inserted his fingers into her vagina, and had engaged in vaginal intercourse with her.  G.O. testified that, when Mr. Rivera touched her, he would say, "Oo, I like that."

{¶10}	The record reflects that G.O. struggled to comprehend certain questions when testifying and would often change her answer, depending on the call of the question.  For instance, when the prosecutor asked her about the age of her former boyfriend, the following exchange took place:

[THE PROSECUTOR]: * * * Do you know how old [T.S.] was back [in 2013]?

[G.O.]: No, I don't.

[THE PROSECUTOR]: Was he younger than you?

[G.O.]: Yes.

[THE PROSECUTOR]: He was younger than you?

[G.O.]: Yes.

[THE PROSECUTOR]: Do you remember [T.S.] being older than you?

[G.O.]: Yes.

[THE PROSECUTOR]: How old was [T.S.]?

[G.O.]: He was probably like the same age as my mom.

[THE PROSECUTOR]: As your mom?

[G.O.]: Yes.

[THE PROSECUTOR]: Okay.  So he was older than you?

[G.O.]: Yes.

Likewise, when the prosecutor asked G.O. to identify Mr. Rivera, the following exchange took

place:

[THE PROSECUTOR]: Do you know [the defendant's] last name?

[G.O.]: I don't know.  I don't know it.

[THE PROSECUTOR]: [G.O.], do you see him in the courtroom today?

[G.O.]: No.

[THE PROSECUTOR]: You don't see him in the courtroom today?

[G.O.]: No.

[THE PROSECUTOR]: [G.O.], do you see the individual sitting over here to this
table to my right?

[G.O.]: Yes.

[THE PROSECUTOR]: Do you recognize that individual?

[G.O.]: Yes.

[THE PROSECUTOR]: [G.O.], who is that individual?

[G.O.]: That's Edwin.

The difficulties inherent in the foregoing exchanges were prevalent throughout the majority of G.O.'s testimony.

{¶11} There was testimony that G.O.'s mother acted as G.O.'s guardian and made certain decisions on her behalf, such as whether she would be prescribed Plan B at the conclusion of her sexual assault examination. The nurse examiner who examined G.O. described her as being "very simple in her statements" and noted that, apart from being firm about how Mr. Rivera had sexually assaulted her, G.O. "would change her story often." Likewise, Detective Dietsche indicated that G.O. was sometimes difficult to understand, was "easily led," and struggled to put things into context. During his interview with the detective, Mr. Rivera acknowledged that G.O. had difficulty understanding things, suffered from a learning disability, and, at times, acted like a twelve-year-old. He also repeatedly indicated that he had concerns about G.O. interacting with men online because she did not understand why it was a problem to openly express affection to strangers or agree to meet them in person.

{¶12} Mr. Rivera argues that his convictions are based on insufficient evidence because the State failed to prove that G.O. suffered from a substantial impairment. He notes that G.O. graduated from high school, held a job at a restaurant, and lived with her boyfriend. He argues that there was only "vague testimony" regarding her learning disability and no evidence that it impaired her ability to function. According to Mr. Rivera, the State failed to explore the extent of G.O.'s abilities with the individuals who knew her best, including himself and her mother. Thus, he argues that there was insufficient evidence that she suffered from a decreased ability to

appraise the nature of or control her conduct. *See Daniels*, 2011-Ohio-6414, ¶ 6, quoting *Zeh*, 31 Ohio St.3d at 103-104.

{¶13} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State set forth sufficient evidence of G.O.'s substantial impairment. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The jury heard testimony that G.O. had a learning disability, attended special education classes to receive her high school degree at the age of twenty, was subject to a guardianship, and received SSI. *See Dasen*, 2017-Ohio-5556, at ¶ 19 (substantial impairment may be proven through lay testimony). Although she had some experience working at a restaurant, she specifically indicated that her employment there was temporary and linked to a special education class that allowed students to try different jobs in the community. She was unemployed at the time of trial and relied on the monthly sum she received from SSI.

{¶14} The jury also heard several different individuals indicate that G.O. had difficulties with comprehension. Those difficulties were evident throughout her testimony when she repeatedly failed to understand the examiner's questions and changed her answers, depending on how a question was phrased. *See id.* During his interview, Mr. Rivera specifically acknowledged that G.O. would act like a twelve-year-old. He also repeatedly expressed his concern for her safety because she did not understand boundaries or why it was a problem to express affection for or agree to meet men she met online. Upon review, the record supports the conclusion that the State set forth evidence from which a rational trier of fact could have concluded that G.O. suffered from a "present reduction, diminution or decrease in [her] ability to either appraise the nature of [her] conduct or to control [it]." *Daniels* at ¶ 6, quoting *Zeh* at 103-

104. Consequently, this Court rejects Mr. Rivera's sufficiency argument. His fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

THE STATE IMPROPERLY BOLSTERED G.O.'S CREDIBILITY AND THE STRENGTH OF ITS OWN CASE.

## ASSIGNMENT OF ERROR NO. 3

THE STATE ENGAGED IN MULTIPLE INSTANCES OF PROSECUTORIAL MISCONDUCT, EVEN AFTER BEING WARNED BY THE TRIAL COURT TO STOP, THAT INFRINGED UPON DEFENDANT'S CONSTITUTIONAL RIGHTS AND DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.

{¶15} In his first and third assignments of error, Mr. Rivera argues that he was denied a fair trial because the State improperly bolstered G.O.'s testimony and engaged in prosecutorial misconduct. For the following reasons, this Court rejects his arguments.

{¶16} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶17} At the time of Mr. Rivera's trial, Detective Dietsche had been a detective with the Elyria Police Department for approximately eleven years. She testified that she acted as the primary investigator in about 120 to 125 cases per year and, "the overwhelming majority of the time," those cases involved sexual assault allegations. She stated that, apart from victims themselves, eyewitnesses in sexual assault cases are rare because those types of cases are usually "very predatorial and private" and "there's a lot of grooming that goes on." When asked about delayed disclosures, she described them as situations where the victim waits to disclose abuse for a period of time, such that the crime is not fresh. Though she did not know the "actual definition" of a delayed disclosure, she stated that delayed disclosures usually occur "in a home where the victim and a suspect reside together * * * or it's a close familial contact or even maybe like a coach where it's over a course of time."

{¶18} Detective Dietsche interviewed G.O. at the police station and testified about their conversation. She stated that it was "very quickly obvious" that G.O. had "cognitive and developmental delays" and could be difficult to understand. For example, she indicated that G.O. had difficulty pinning down the exact time frame during which Mr. Rivera had abused her. She testified that it was common for "people that are at risk or delayed or small children" to have difficulty grasping the concept of time. Moreover, while testifying, she repeatedly referred to the exact questions she had asked G.O. during their interview and the exact answers G.O. had offered.

{¶19} Detective Dietsche also interviewed G.O.'s mother and testified regarding several of the mother's exact statements to her. For example, she testified that the mother had said Mr. Rivera seemed jealous of G.O.'s romantic relationships, causing the mother to ask Mr. Rivera whether he was "f***ing [her] daughter." Detective Dietsche testified that the mother had said

she had been asking G.O. "for years" if Mr. Rivera had ever touched her, but G.O. always denied it. Further, the detective testified that the mother had said her family members would caution her that Mr. Rivera was only with her so that he could "get access to [G.O.]." Detective Dietsche indicated that she found concerning the fact that the question of abuse was a "common theme * * * over [the] years," particularly because "people like [G.O.] * * * are easily victimized."

{¶20} G.O.'s mother also testified. She stated that Detective Dietsche began their interview by telling her that Mr. Rivera "was raping [G.O.]" She also shared several statements either she or the detective had made during their interview, several statements that the sexual assault nurse examiner had made to her after examining G.O., and several exchanges that she had with G.O. regarding whether the abuse had occurred.

{¶21} Twice during Detective Dietsche's testimony and once during G.O.'s mother's testimony, the trial court intervened and cautioned the State to reign in its witnesses. Specifically, the court addressed the fact that both Detective Dietsche and G.O.'s mother were testifying to out-of-court statements that either they or others had uttered. The court also informed the State that it would not permit Detective Dietsche to offer expert testimony on the grooming process or draw comparisons between that process and Mr. Rivera's behavior, given that she had not been qualified to testify in that capacity.

{¶22} Mr. Rivera argues that the State engaged in misconduct and denied him a fair trial when it: (1) repeatedly elicited hearsay and double hearsay from its witnesses in an attempt to bolster G.O.'s credibility and undermine his character; (2) essentially tendered Detective Dietsche as an expert in the areas of sexual assault investigations, delayed disclosures, and grooming, despite the fact that she was not qualified to testify to that effect; (3) otherwise elicited improper conclusions from the detective (e.g., that G.O. obviously suffered from

cognitive and developmental delays); (4) violated Evid.R. 608 by repeatedly asking the detective whether various portions of G.O.'s in-court testimony were consistent with her interview statements; (5) improperly and repeatedly equated G.O. with a child, despite the fact that she was nineteen years old when these events occurred; and (6) elicited testimony about alleged, improper conduct that pre-dated the indictment period. Mr. Rivera further argues that the cumulative effect of the foregoing misconduct deprived him of a fair trial.

{¶23} Upon review, the record reflects that Mr. Rivera failed to object to the vast majority of the alleged misconduct he cites in support of his assignments of error. He did not object to the various hearsay and double hearsay statements the State elicited when Detective Dietsche, G.O., and G.O.'s mother testified. He did not object to the detective's testimony on the basis that she was offering an unqualified, expert opinion or that it violated Evid.R. 608. He did not object when the detective first testified that G.O. obviously suffered from cognitive and developmental delays. Moreover, he has not cited this Court to any portion of the transcript evidencing that he objected to testimony about conduct that pre-dated the indictment period. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶24} When a defendant fails to object to alleged prosecutorial misconduct, he forfeits all but plain error. *See State v. Chapman*, 9th Dist. Lorain No. 07CA009161, 2008-Ohio-1452, ¶ 23. Under Crim.R. 52, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Nevertheless, "[t]his Court will not 'fashion a plain error argument on [a defendant's] behalf and then address it sua sponte.'" *State v. Rouse*, 9th Dist. Summit No. 28301, 2018-Ohio-3266, ¶ 15, quoting *State v. Patterson*, 9th Dist. Lorain No. 16CA011035, 2017-Ohio-8196, ¶ 24. The record reflects that Mr. Rivera has

only asserted plain error with respect to one of his arguments. Specifically, he argues that plain error occurred when the State repeatedly elicited irrelevant and prejudicial testimony that portrayed G.O. as a child. Because Mr. Rivera has only argued plain error with respect to that issue, this Court will likewise limit its plain error review to that issue. *See Rouse* at ¶ 15. As to the remainder of the alleged misconduct with which Mr. Rivera takes issue, this Court declines to construct a plain error argument on his behalf. *Id.*

**{¶25}** Plain error exists only where there is a deviation from a legal rule, that is obvious, and that affected the appellant's substantial rights to the extent that it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶26}** Mr. Rivera argues that plain error occurred when the State repeatedly mischaracterized G.O. as a child. He notes that Detective Dietsche equated G.O. with a small child and suggested that people like her were "easily victimized." He also notes that, during closing argument, the State argued that G.O. "would act like a twelve-year-old." Because G.O. was nineteen years old when these events transpired, Mr. Rivera asserts that the State's questions and arguments were irrelevant, prejudicial, and only presented to evoke sympathy.

**{¶27}** To the extent the State argued that G.O. "would act like a twelve-year-old," the record reflects that the prosecutor was merely repeating one of Mr. Rivera's interview statements. While speaking with Detective Dietsche, Mr. Rivera specifically compared G.O.'s behavior to that of a twelve-year-old. Mr. Rivera has not explained how the prosecutor's mere repetition of his own statement amounted to misconduct. Accordingly, he has not shown that an actual error occurred for purposes of plain error review. *See Barnes* at 27.

{¶28} With respect to the remainder of Mr. Rivera's plain error argument, this Court cannot conclude that he has demonstrated prejudice. Assuming without deciding that the prosecutor engaged in misconduct when Detective Dietsche testified that people like G.O. were "easily victimized" and otherwise equated her with a juvenile, Mr. Rivera has not shown that her testimony actually affected the outcome of his trial. *See id.* G.O. and her mother clearly testified that G.O. was nineteen years old at the time these events transpired, so the jury was well aware that she was not, in fact, a juvenile. Moreover, the jurors heard both G.O. and Mr. Rivera testify, so they had ample opportunity to judge their credibility and form their own impressions about G.O.'s cognitive abilities. *See State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. As noted, notice of plain error is appropriate only in "exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d 91 at paragraph three of the syllabus. Upon review, Mr. Rivera has not shown that the admission of the foregoing testimony warrants such relief. *See id.*

{¶29} The record does support the conclusion that Mr. Rivera objected to two instances of alleged misconduct. First, he objected when Detective Dietsche made several other statements about G.O.'s cognitive abilities. Those statements were that G.O. had been "easily confused by [the prosecutor] or by the defense attorney" when testifying and that she was "not developed enough to be able to really qualify [her] statements" about when Mr. Rivera's abuse began/ended. Second, he objected when the State attempted to ask the sexual assault nurse examiner questions about the limits of G.O.'s cognitive abilities. Those questions related to the nurse examiner's experience examining young children and her impression of G.O.'s intelligence (i.e., whether she appeared to possess average intelligence for her age).

{¶30} Assuming without deciding that the foregoing exchanges were the result of improper questioning on the part of the prosecutor, Mr. Rivera has not shown that, but for the misconduct, the jury would not have convicted him. *Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. When G.O. testified, the jury had the opportunity to assess her ability to comprehend and respond to questions. The record reflects that she repeatedly failed to understand questions and changed her answers, depending on how a question was phrased. The jury also heard testimony that she had a learning disability, attended special education classes to receive her high school degree at the age of twenty, was subject to a guardianship, and received SSI. When interviewed, Mr. Rivera specifically admitted that G.O. had a learning disability, did not understand boundaries, and would act like a twelve-year-old. Accordingly, even if the prosecutor asked Detective Dietsche and the nurse examiner certain improper questions about G.O.'s cognitive abilities, the record contains a wealth of other evidence from which the jury reasonably could have concluded that G.O. was substantially impaired. Mr. Rivera, therefore, has not shown that he suffered actual prejudice as a result of the prosecutor's alleged misconduct. *See Smith*, 14 Ohio St.3d at 14. His first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR NO. 4

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶31} In his fourth assignment of error, Mr. Rivera argues that his convictions are against the manifest weight of the evidence. This Court disagrees.

{¶32} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶33}** Mr. Rivera argues that his convictions are against the manifest weight of the evidence because G.O.'s testimony "was so shockingly inconsistent." He notes that there were numerous discrepancies between the information she provided Detective Dietsche, the sexual assault nurse examiner, and the jury when testifying. Further, he notes that the State was unable to produce any physical evidence to substantiate her claims of sexual assault. Because the State's case against him was entirely circumstantial in nature and G.O. was not a credible witness, Mr. Rivera argues, the jury clearly lost its way in convicting him.

**{¶34}** As noted, G.O. struggled to comprehend certain questions when testifying and would often change her answer, depending on the call of the question. She had difficulty providing consistent answers when asked for certain details, such as when Mr. Rivera began touching her, how often he did so, and when the last instance of sexual abuse had occurred. She also became confused when asked to compare certain aspects of her trial testimony with prior statements she had made during her interviews. For example, there were conflicts between her trial testimony and her statements to Detective Dietsche regarding whether she had told her mother about Mr. Rivera's abuse. Nevertheless, G.O. repeatedly indicated that Mr. Rivera had touched her breasts and had inserted his fingers and his penis into her vagina. She testified that

he had assaulted her in her bedroom, as well as in his bedroom, and, when he did so, he would say, "Oo, I like that." G.O. testified that she did not like it when Mr. Rivera touched her.

**{¶35}** Both Detective Dietsche and the sexual assault nurse examiner who examined G.O. noted that she struggled to provide them with consistent information about the details surrounding Mr. Rivera's abuse. Yet, those details primarily concerned the timeframes during which the abuse had occurred and G.O.'s recollection of the type of sexual conduct/contact at issue on each particular occasion. Both the detective and the nurse examiner testified that G.O. was firm regarding the fact that the abuse had occurred. Both testified that she described Mr. Rivera inserting his fingers and penis into her vagina.

**{¶36}** G.O.'s mother testified that, before G.O. and Mr. Rivera argued over a cell phone, G.O. never indicated that Mr. Rivera was abusing her. The mother claimed that she could hear everything that went on inside G.O.'s bedroom and denied that Mr. Rivera had spent any significant amount of time with G.O. She also denied ever saying that she had concerns about Mr. Rivera abusing G.O. or that he was jealous of G.O.'s boyfriend. When confronted with several of her interview statements, however, she grudgingly admitted to having made the latter two statements. According to the mother, she only developed those concerns in the midst of her interview with Detective Dietsche because the detective boldly had professed that Mr. Rivera "was raping [G.O.]" She testified that G.O. had since retracted her allegations of sexual abuse. She admitted, however, that she was facing a charge of obstruction related to this matter because "[t]he detectives said [she] was trying to hide [G.O.]" during their investigation. She also admitted that she was still in a relationship with Mr. Rivera.

**{¶37}** Mr. Rivera testified in his own defense and denied sexually assaulting G.O. He stated that he was diagnosed with kidney failure in 2010 and, as a result of his medical condition,

was impotent. Yet, during their interview, Detective Dietsche specifically asked Mr. Rivera whether his penis functioned normally. Mr. Rivera indicated that it did and noted that he did "not have a medical condition or anything."

{¶38} The State played Mr. Rivera's entire interview with Detective Dietsche for the jury. During the initial portion of the interview, Mr. Rivera steadfastly denied that any type of sexual contact/conduct had occurred between him and G.O. As the interview progressed, however, he then claimed that G.O. sometimes touched his butt or cupped his groin through his pants because she thought it was funny. Far later in the interview, he then admitted that G.O. had occasionally taken his hand and stuck it down her underwear when he was busy doing something else. He indicated that his fingers might have touched her vagina on those occasions, so that could explain why she thought that he had inserted his fingers into her vagina. He claimed that he had told G.O.'s mother about G.O.'s inappropriate behavior, but she did not want to hear about it.

{¶39} Having reviewed the record, this Court cannot conclude that the jury clearly lost its way when it found Mr. Rivera guilty of sexual battery and gross sexual imposition. *See Otten*, 33 Ohio App.3d at 340. G.O. testified that Mr. Rivera touched her breasts and inserted his fingers and penis into her vagina when she did not want him to do so. She also reported the same misconduct to several individuals, including school officials, Detective Dietsche, and the sexual assault nurse examiner. Although G.O. contradicted herself on several occasions and struggled with various aspects of her testimony, the State presented evidence that she suffered from a substantial impairment. The jury, therefore, reasonably could have concluded that the inconsistencies in her testimony were the result of her substantial impairment rather than any attempt to mislead on her part. "This Court has repeatedly held that the trier of fact is in the best

position to determine the credibility of witnesses and evaluate their testimony accordingly." *Johnson*, 2010-Ohio-3296, at ¶ 15. Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, this Court cannot conclude that this is the exceptional case where the evidence weighs heavily against Mr. Rivera's conviction. *See Otten* at 340. Accordingly, his fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

TRIAL COUNSEL'S PERFORMANCE WAS SO INEFFECTIVE THAT IT AFFECTED THE OUTCOME OF THE TRIAL AND VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHTS.

{¶40} In his second assignment of error, Mr. Rivera argues that he received ineffective assistance of counsel because his counsel repeatedly failed to object to improper testimony and never asked for a mistrial or curative instructions. For the reasons outlined below, this Court rejects his argument.

{¶41} To succeed on an ineffective assistance of counsel claim, the defendant must show both that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficiency exists only if counsel's performance fell below "an objective standard of reasonable representation." *See State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of syllabus. An appellate court need not analyze both prongs of the *Strickland* test if it finds that the defendant failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶42} Mr. Rivera asserts that his counsel was ineffective because he failed to object at multiple points during the testimony of Detective Dietsche and G.O.'s mother. He notes that the State elicited such an egregious amount of hearsay during their testimony that the trial court was forced to intervene sua sponte and admonish the State at sidebar. He further notes that the court was forced to intervene when the State attempted to elicit improper expert testimony from Detective Dietsche. Mr. Rivera argues that his counsel ought to have objected to the improper testimony and ought to have moved for a mistrial and/or curative instruction. He argues that the admission of the improper testimony prejudiced him because it damaged his credibility and the State's entire case hinged upon the jury's impression of his and G.O.'s credibility.

{¶43} Even assuming that Mr. Rivera's counsel's performance fell below "an objective standard of reasonable representation" for the reasons outlined above, this Court cannot conclude that Mr. Rivera has demonstrated resulting prejudice. *See Bradley* at paragraph two of the syllabus. To the extent that hearsay statements were introduced at trial, virtually all of the parties who made those statements testified and were subject to direct and cross-examination. More importantly, many of the hearsay statements with which Mr. Rivera takes issue also emerged during his recorded interview with Detective Dietsche. For example, during the interview the detective specifically confronted Mr. Rivera with G.O.'s mother's accusations of sexual abuse and her observation that he had acted jealous of G.O.'s boyfriend. That interview was played for the jury and Mr. Rivera has not challenged its admission on appeal. Because much of the hearsay testimony introduced at trial was merely cumulative of the statements contained in his interview, Mr. Rivera cannot demonstrate prejudice as a result of the introduction of that testimony. *See State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 37.

{¶44} As noted, the jury heard G.O. testify that Mr. Rivera repeatedly touched her breasts and inserted his fingers and penis into her vagina. They also heard testimony that G.O. reported that abuse when speaking with school officials, Detective Dietsche, and the sexual assault nurse examiner. Meanwhile, the jury heard Mr. Rivera vacillate between a complete denial of any sexual contact with G.O. and an eventual claim that she had touched him and forced his hand down her underwear on more than one occasion. The jury also heard him claim that he suffered from a medical condition that caused impotence in spite of his earlier interview statement, denying that he had any such medical condition. Upon review, Mr. Rivera has not established that "there exists a reasonable probability that, were it not for counsel's errors, the result of [his] trial would have been different." *Bradley* at paragraph three of syllabus. Accordingly, this Court rejects his argument to the contrary. Mr. Rivera's second assignment of error is overruled.

## III.

{¶45} Mr. Rivera's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CONCUR.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOSEPH C. PATITUCE, MEGAN A. PATITUCE, and ASHLEY A. KEENAN, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.