[Cite as *State v. Williams*, 2022-Ohio-3476.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    30148 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PERRY WILLIAMS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 20 11 3220 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

SUTTON, Judge.

{¶1}    Defendant-Appellant Perry Williams appeals the judgment of the Summit County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

{¶2}    Mr. Williams was indicted on one count of domestic violence, in violation of R.C. 2919.25(A) and R.C. 2919.25(D)(4), a felony of the third degree, for knowingly causing or attempting to cause physical harm to a family or household member.  Mr. Williams pleaded not guilty, and the matter proceeded to a jury trial

{¶3}    Mr. Williams' arrest stemmed from an incident that occurred on October 25, 2020, at the home of S.M., the victim in this case.  S.M. testified at trial that at the time of Mr. Williams' arrest, he was living in her home.  During the day preceding the incident, Mr. Williams was not at home the majority of the day.  When Mr. Williams returned that evening, he got into an argument with S.M. because he wanted to use her car to go out for the evening.  However, S.M. told him she

was using the car so he could not use it. Mr. Williams then called a friend to pick him up and he left the home.

{¶4} Shortly before five o'clock the next morning, S.M. was asleep in her home when Mr. Williams called and asked her to let him into the locked home. S.M. let Mr. Williams into the home through a back door. At trial, S.M. testified that as soon as Mr. Williams walked into the home, she could tell he was angry. She stated Mr. Williams repeatedly asked her where she had been, and she told him that she had been at home asleep. She stated that Mr. Williams pulled a stack of money out of his pocket and swatted her in the face with it. Mr. Williams then became more aggressive with her and pushed her into the refrigerator, continuing to ask her where she had been. S.M. testified as Mr. Williams continued to get angrier, he put his hands around her neck and began strangling her. S.M. testified she "was starting to go out of - - like losing consciousness." She was able to slide down the counter which caused Mr. Williams to lose his grip, allowing her to catch her breath.

{¶5} S.M.'s adult son, A.M., and his girlfriend, A.P., were also present in the home that morning and S.M. testified she then ran up the stairs and tried to enter her son's bedroom. It was locked, however, so she knocked on his door to wake him. At that point, Mr. Williams reached the top of the stairs and S.M. retreated into her bedroom without reaching her son. Mr. Williams followed S.M. into her bedroom and threw a fan and wood stool at her. Mr. Williams then "pushed [her] on the bed and started strangling [her] again." S.M. testified she was struggling to break free and kicking her legs against the wall. Though she was able to stand up, Mr. Williams had her pinned against the bedroom wall. S.M. heard her son's bedroom door open and he asked her from the hallway, "Mom are you okay?" S.M. testified Mr. Williams told her "[y]ou better say you are okay, or I'm going to kill you all." S.M. stated that her son asked "another time or two." S.M.

was finally able to respond "[n]o, I'm not" and her son broke down the bedroom door and got between her and Mr. Williams. S.M. testified Mr. Williams then said something to the effect of "I got something for both y'all" and left the bedroom. S.M., her son, and her son's girlfriend all went into her son's bedroom, barricaded the door, and called 911.

{¶6} S.M.'s son, A.M., and his girlfriend, A.P., also testified at trial. Their testimony corroborated the testimony of S.M. Both A.M. and A.P. testified to waking to a disturbance in S.M.'s room, A.M. trying to ask his mother if she was okay, and that when S.M. did not respond, A.M. broke down the door to S.M.'s bedroom and got between S.M. and Mr. Williams.

{¶7} Officer Leah Bullard and Officer Joseph Woodin of the Akron Police Department responded to the scene. At trial, Officer Bullard testified she had been a member of the Akron Police Department for a year and a half. Officer Bullard stated that as part of her training, she was instructed to look for signs and symptoms of strangulation. Officer Bullard stated that officers are trained to look for "redness and bruising around the neck and throat area. [Officers] are trained to look for redness and bloodshot in the whites of the eyes, not correlated to any drug or alcohol use. Redness that is an anomaly to the eye." Officer Bullard testified that when she arrived at the scene she could "see some redness on the front of [S.M.'s] neck[], around the throat area. And she had some redness on the left side of her face, cheek bone. And [she] was also able to see the anomaly in [S.M.'s] eye, that red anomaly that is consistent with strangulation."

{¶8} At trial, Officer Woodin testified when he arrived at the scene, he began searching the home. As he was coming up from the basement of the home, he discovered Mr. Williams sitting in the kitchen. Officer Woodin stated Mr. Williams told him that he and S.M. had a verbal argument after he told her he was leaving her. Officer Woodin stated Mr. Williams denied injuring

S.M. and told Officer Woodin he came back to the scene because he had prior domestic violence convictions.

{¶9} The defense presented the testimony of one witness, LW., who had been out with Mr. Williams on the evening in question. L.W. testified he dropped Mr. Williams off near S.M.'s home and stated Mr. Williams was attempting to retrieve a bag from the home because he did not plan on staying the night at S.M.'s home. L.W. said he did not witness any altercation between Mr. Williams and S.M., and left the area as soon as police cars began to show up. Mr. Williams did not testify as part of his defense.

{¶10} After deliberating, the jury returned a verdict of guilty on the sole count of the indictment. Mr. Williams was sentenced to a term of imprisonment of thirty-six months.

{¶11} Mr. Williams now appeals, raising two assignments of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT'S DENIAL OF THE MOTION FOR A MISTRIAL WAS SEVERELY PREJUDICIAL AND NEGATIVELY IMPACTED [MR. WILLIAMS'] RIGHT TO A FAIR TRIAL.**

{¶12} In his first assignment of error, Mr. Williams argues the trial court erred when it denied his motion for a mistrial because the State improperly introduced evidence of his prior convictions for domestic violence. For the reasons that follow, we disagree.

### Standard for Declaring a Mistrial

{¶13} A mistrial must be declared "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463 (1973) and *Arizona v. Washington*, 434 U.S. 497, 505-506 (1978). Because "the trial judge is in the best position to determine whether the situation in [the]

courtroom warrants the declaration of a mistrial[,]" the decision is one committed to the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). This Court reviews the denial of a motion for mistrial for an abuse of discretion. *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 6, citing *State v. Patel*, 9th Dist. Summit No. 24024, 2008-Ohio-4692, ¶ 46. "In analyzing whether a defendant was deprived of a fair trial, an appellate court must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt." *Columbus v. Aleshire*, 10th Dist. Franklin No. 09AP-104, 2010-Ohio-2773, ¶ 42, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

{¶14} Here, Mr. Williams was charged with domestic violence in violation of R.C. 2919.25(A) and R.C. 2919.25(D)(4). R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(D)(4) provides that domestic violence is a felony of the third degree where the defendant "previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses * * *."

{¶15} "When a prior conviction elevates a misdemeanor to a felony, 'the prior conviction is an essential element of the crime, and must be proved by the state.'" *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, ¶ 17, quoting *State v. Allen*, 29 Ohio St.3d 53, 54 (1987). Therefore, here, the State had the burden of proving Mr. Williams had been convicted of two or more (1) domestic violence offenses or (2) offenses of the type listed in R.C. 2919.25(D)(3). *See also State v. Rodriguez*, 9th Dist. Summit No. 26858, 2014-Ohio-911, ¶ 5. A defendant may "stipulate to a prior conviction to avoid the evidence being presented before a jury." *State v. S.D.K.*, 8th Dist. Cuyahoga No. 109195, 2021-Ohio-63, ¶ 34, quoting *State v. Gwen*, 134 Ohio St.3d 284, 2012-

Ohio-5046, ¶ 14. Mr. Williams argues his prior convictions "could have and should have been proven by stipulation. Instead, the State chose to introduce such evidence by direct examination testimony from one of the police officers" and that such action deprived Mr. Williams of his right to a fair trial.

{¶16} Here, the record does not indicate the trial court refused Mr. Williams' offer to stipulate to the fact of the prior convictions. In this case, the record shows that the trial court accepted the defendant's stipulation and did not introduce such evidence through the direct examination testimony of the police officer. When the State asked Officer Bullard about the prior convictions, the following exchange occurred on the record:

| | |
|---|---|
| [PROSECUTOR:] | And my last question is, as you were doing your investigation, did you learn that Mr. Williams had two prior convictions for domestic violence? |
| [DEFENSE COUNSEL:] | Objection. Sidebar. |
| [THE COURT:] | Do you want to go back to my office? |
| [DEFENSE COUNSEL:] | Yes, Your Honor. |

(The following proceedings were held in chambers out of the presence of the jury.)

| | |
|---|---|
| [DEFENSE COUNSEL:] | Judge, I understand that the State had to prove that Mr. Williams had two priors to get it up to that felony 3 level. I understand that. But I thought our agreement was that those two felony convictions were coming in a different way, maybe through stipulation. |
| [PROSECUTOR:] | I thought the copies were coming in by stipulation, but I didn't know he was going to stipulate to the elements. That is different. He's stipulating to the documents, but not stipulating to an element of the crime, I didn't think he was willing to do that. |
| | But I'm not going to ask anything additional about it. If you stipulate to it, then that might be an issue for |

|  | him, because he is admitting to an element of the crime. |
|---|---|
| [DEFENSE COUNSEL:] | Well, we agreed that he had these convictions. Now, all of a sudden, we have an officer saying - - |
| [THE COURT:] | I thought so too. I thought he was stipulating to the two convictions, that those would have come into evidence. That they were stipulating to – you didn't have to bring anyone from the clerk's office to authenticate them, so that should be enough, instead of asking the questions. |
| [THE PROSECUTOR:] | Well, I'm concerned that we are going to have an issue of beyond reasonable doubt when they don't hear any testimony about it, unless we are stipulating to an element of the crime. |
|  | If we are going to go there, Judge, you can ask them to disregard it. But I think we are talking about two different things. |
| [THE COURT:] | Are you stipulating that the element of the crime, that he's been convicted of two or more domestic violence offenses in the part, to that element of the crime. Is that what you are stipulating to? |
| [DEFENSE COUNSEL:] | Yes, but – |
| [THE COURT:] | That's what she needed to know. |

While still in the trial court's chambers, after resolving the issue of the stipulation, and granting the stipulation, defense counsel then raised the issue that the jurors had heard twice about Mr. Williams' previous convictions.[1]

| [DEFENSE COUNSEL:] | But now the problem is, we have a - - |
|---|---|
| [THE COURT:] | They have heard it twice. |

---

[1] Before the exchange between the State and Officer Bullard, the jurors had previously heard of Mr. Williams' prior domestic violence convictions during the testimony of the victim. The State asked the victim: "[D]id [Mr. Williams] admit to you that he did, in fact, have two prior convictions for domestic violence?" The victim responded: "Yes." The defendant made no objection to the State's question or the victim's answer.

[DEFENSE COUNSEL:] Right.

[THE COURT:] I can ask them to disregard it.

Defense counsel then made a motion for a mistrial, which the trial court denied. When proceedings resumed in the court room, the trial court issued an instruction to jurors to disregard the previous statement regarding any previous domestic violence convictions of Mr. Williams. We presume that the jury followed the court's instructions to disregard the testimony. *State v. Treesh*, 90 Ohio St.3d 460, 2001-Ohio-4, ¶ 47. Given the context of the prosecutor's question, the curative instruction by the court, and Mr. Williams' stipulation that he had been convicted of two prior domestic violence convictions, we conclude that the trial court did not abuse its discretion in denying Mr. Williams' motion for a mistrial.

**{¶17}** Mr. Williams' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**[MR. WILLIAMS'] CONVICTION SHOULD BE OVERTURNED AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶18}** In his second assignment of error, Mr. Williams argues his conviction is against the manifest weight of the evidence. For the reasons that follow, we disagree.

Manifest Weight of the Evidence

**{¶19}** When considering whether a conviction is against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the

evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶20} Mr. Williams argues that his convictions are against the manifest weight of the evidence because: (1) A.P. initially reported a burglary in progress when she called 911; (2) A.M. confirmed he did not see an assault take place or Mr. Williams brandish a gun; and (3) the victim texted Mr. Williams expressing strong feelings for him. Mr. Williams also points to the fact that Mr. Williams returned to the scene to speak with police and maintained a calm demeanor while speaking to officers at the scene.

{¶21} However, A.P. also testified that she initially reported a burglary in progress because she was confused in the moment. A.M. also testified that when he heard A.P. tell the 911 dispatcher the incorrect information, he took the phone and relayed the correct information to the dispatcher. Additionally, S.M. testified to Mr. Williams hitting and strangling her, and Officer Bullard testified to observing injuries on S.M. that were consistent with strangulation. The State also presented pictures of S.M.'s bedroom that evidenced a struggle had taken place in the room. Both A.M. and A.P. testified to hearing a struggle taking place in S.M.'s bedroom, and to finding Mr. Williams in S.M.'s bedroom after A.M. broke the bedroom door down.

{¶22} This Court must "consider the credibility of witnesses" as part of our manifest weight review. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Nonetheless, this Court is mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 39, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Given the evidence presented by the State in this case, this Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against Mr. Williams' conviction.

**{¶23}** Mr. Williams' second assignment of error is overruled.

III.

**{¶24}** For the foregoing reasons, Mr. Williams' two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and, JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.